Argued October 20, reversed and remanded December 22, 1954

# TERMINAL NEWS STAND, INC. *v.*
# GENERAL CASUALTY CO.
### 278 P. 2d 158

*William J. Crawford* argued the cause for respondent. On the brief were Crawford and Willner, of Portland.

*A. B. Schallhorn,* of Portland, argued the cause for appellant. With him on the briefs was W. C. Beers, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and LUSK, Justices.

PER CURIAM.

Plaintiff brought this action upon a policy of burglary insurance, and in a jury trial recovered a judgment from which the defendant has appealed.

The only assignments of error which need to be discussed are based upon the court's ruling denying the defendant's motions for a judgment of involuntary nonsuit and for a directed verdict. The question presented by these assignments of error is whether the evidence shows a loss covered by the terms of the policy.

The plaintiff was engaged in the operation of a confectionery and newsstand in the Trailways Bus Depot at 520 S. W. Salmon Street, Portland. The defendant, General Casualty Company of America, issued to plaintiff a policy of "merchandise burglary" insurance by which the defendant agreed:

"To indemnify the insured　＊　＊　＊

"(a) For all loss of merchandise, furniture, fixtures and equipment occasioned by BURGLARY which shall mean the felonious abstraction of such property from within such premises, by any person or persons making felonious entry therein by actual force and violence when the premises are not open for business, of which force and violence there shall be visible marks made upon the exterior of the premises at the place of such entry, by tools, explosives, electricity, gas or chemicals.　＊　＊　＊＊"

Sometime during the night of September 9-10, 1951, while the policy was in force, a person or persons entered the premises of the plaintiff and stole therefrom watches, cigarette lighters, and other articles of merchandise. The action is brought to recover for this loss.

The evidence discloses the following facts: Plain-

tiff's newsstand was located in the waiting room of the bus depot. It consisted of a counter, showcases, shelves, and other like equipment. An interior wall of the waiting room served as the rear wall of the newsstand. The main portion of the counter ran parallel to the wall, and at either end the counter extended back to the wall. Above the outer edge of the counter was a metal frame carrying a track or runway used for the operation of a canvas curtain, which, when drawn around the counter so as to encircle it and fastened with a metal zipper and secured by padlocks, constituted with the rear wall a complete enclosure for the newsstand except at the top, which remained open. When the newstand was not open for business it was customarily so enclosed. There is no testimony as to the distance from the floor to the overhead frame, but photographs in evidence indicate that a tall man could possibly reach the upper part of it. About six feet above the frame at the east end of the newsstand is a balcony, access to which is gained by a stairway leading from the ground floor.

On September 9, 1951, at about midnight, the newsstand was closed in the manner described. The next morning the robbery was discovered by an employee of the plaintiff, Mrs. Sydman, when she came to work about eight o'clock. The investigation made by her and Mr. West, treasurer of the plaintiff corporation, who arrived soon after, disclosed these conditions at the east end of the premises: There were finger prints on the balcony railing and on the overhead frame that holds the curtain, and footprints on the glass showcase below. An iron bar or rod, which extended along the inside of the frame from the back to the front giving it support, was bent downward. The footprints on the showcase were directly below the bent portion of the bar. As stated in the plaintiff's brief, "We do

know that the bar is suspended in the air a fair distance from the balcony, and a fair distance from the top of the newsstand. Possibly a ladder was used to reach the bar, possibly not. Plaintiff does not have to prove which tool was used. Certainly the inference is clear that the burglars entered the newsstand by way of the bar.'' Also, at the east end of the newsstand there was a slit in the curtain about counter high and approximately ten or twelve inches long, and near the slit on the counter inside the curtain, as Mrs. Sydman testified, a card used for displaying watches and two checks made out by the plaintiff corporation were found.

■■ The foregoing is a fair summary of all the evidence which throws any light on the question whether the plaintiff's loss was occasioned by ''burglary'' as that word is defined in the clause of the policy above quoted. It is not any and every burglary which constitutes a basis of liability, but only burglary as defined in the contract. The language of the clause is not doubtful, uncertain or ambiguous, and does not call for construction. It must be given effect in accordance with the ordinary and generally accepted meaning of the words employed. *Hesse v. U. S. Fid. & Guar. Co.,* 143 Or 700, 702, 21 P2d 1090; *Purcell v. Wash. Fid. Nat. Ins. Co.,* 146 Or 475, 485, 30 P2d 742. Such has been the holding of the courts in cases dealing with identical or similar limitations of liability in policies of burglary insurance. *Leeds, Inc. v. Aetna Casualty & Surety Co.,* 40 F Supp 966 969; *General Acc. Fire & Life Assur. Corp. v. Heller,* 127 Colo 64, 253 P2d 966; *Komroff v. Maryland Casualty Co.,* 105 Conn 402, 135 A 388; *Swanson v. Central Surety & Ins. Corp.,* 343 Mo 350, 121 SW2d 783; *Rosenthal v. American Bonding Co.,* 207 NY 162, 100 NE 716, 46 LRA (ns) 561; *Lee v. Preferred Accident Insurance Co.,* 215 NYS 366, 216 App Div 453;

*Northwestern Casualty & Surety Co. v. Barzune,* (Tex Civ App) 42 SW2d 100; *Shattuck & Jones v. Travellers Indemnity Co.,* 323 Mass 146, 80 NE2d 313.

 As stated in *Komroff v. Maryland Casualty Co.,* supra:

"In order to recover upon a policy of insurance, it is essential that the insured bring himself within its express provisions. If there are provisions of doubtful meaning, that construction which is most favorable to the insured should be adopted. Dresser v. Hartford Life Ins. Co., 80 Conn. 681, 70 A. 39; Moskovitz v. Travelers' Indemnity Co., 144 Minn. 98, 174 N. W. 616. But if the terms are plain and unambiguous, they must be accorded their natural and ordinary meaning; the court cannot indulge in forced construction, nor so distort provisions as to give them a meaning evidently not intended by the parties to the contract and which would cast upon the insurer a liability which it has not assumed (citing cases)."

So, in giving effect to the "visible marks" provision in a similar policy, Judge Hiscock, speaking for the court in *Rosenthal v. American Bonding Company,* supra, said:

"* * * If the parties to a contract adopt a provision which contravenes no principle of public policy and contains no element of ambiguity the courts have no right to relieve one of them from disadvantageous terms which he has actually made, by a process of interpretation."

The elements of burglary as defined in the policy are (1) The felonious abstraction of merchandise from within the premises; (2) by a person or persons making felonious entry therein *by actual force and violence;* (3) when the premises are not open for business; (4) *of which force and violence there shall be visible marks*

*made upon the exterior of the premises;* (5) *at the place of entry;* (6) *by tools,* etc.

■ We have here ample evidence of the felonious abstraction of merchandise from within the premises by a person or persons making a felonious entry therein when the premises were not open for business. Assuming that the bent bar constitutes evidence that such entry was made with force and violence, yet it is certain that there is no evidence of visible marks of such force and violence made upon the exterior of the premises at the place of entry by tools. All the evidence points to the inference that the thieves gained entrance to the newsstand at its east end either by climbing over the framework or by descending from the balcony above. The bending of the bar could have been caused by a man standing on it, or using it to let himself down to the showcase, or to pull himself up when leaving the premises. No other theory is suggested as to how entry was effected, and, as we have seen, it is conceded by plaintiff that "the inference is clear that the burglars entered the newsstand by way of the bar." There is a suggestion in plaintiff's brief that a ladder was used, and that a ladder may be regarded as a tool. Even though it were to be conceded that a ladder is a tool within the meaning of the policy, it is only speculation to assume that one was used and there is no evidence of any visible marks made by it or any other tool at the place of entry. Even if there were such visible marks, we think it would be difficult to say that they were made upon the exterior rather than the interior of the premises, for the bar was on the inside of the overhead framework.

The plaintiff contends, however, that the slit in the curtain is evidence of an entry within the definition of the word burglary, that the evidence "indicates that

at least some of the merchandise was removed from the premises through the slit, since merchandise was found just outside the slit", and that the card and the two checks to which we have referred were "outside the curtain when closed". We can find no such evidence. Mrs. Sydman was the only witness who testified on the subject, and she said that the card was inside the premises "on the counter where these postcards are" and that that was also where the checks were found. As the curtain when drawn completely enclosed the counter, the objects referred to could not have been outside the curtain.

No doubt the slit in the curtain was made with a knife or some other sharp tool. Why it was made is a matter of pure guesswork. But it was not the place of entry of the robbers. It was not, to quote from *Maryland Casualty Co. v. Nicetown Dye Works,* 94 F2d 549 (CCA3rd), cited by the plaintiff, "the real entry which brought about the loss". It is true that within the meaning of the word entry as used in the law of burglary, "It is not necessary that the party shall get his whole body into the house, and the least entry of any part of the body is sufficient." 12 CJS 674, Burglary § 10. "An entry is accomplished by putting through the place broken the hand, finger, foot, or any instrument with which it is intended to commit a felony." *State v. Chappell,* 185 SC 111, 193 SE 924. See, also, *People v. Pettinger,* 94 Cal App 297, 271 P 132; *Stroud v. State,* 124 Tex Cr Rep 56, 60 SW2d 439. As the court in *Walker v. State,* 63 Ala 49, 35 Am Rep 1, said, "The *breaking* may be complete, and yet an *entry* never effected. From whatever cause an *entry* is not effected, burglary has not been committed. When one instrument is employed to *break,* and is without capacity to aid otherwise than by opening by way of

*entry,* and another instrument must be used, or the instrument used in the breaking must be used in some other way or manner to consummate the criminal intent, the intrusion of the instrument is not, of itself, an *entry.*'' The cases of *Bass v. State,* 126 Tex Cr R 170, 70 SW2d 730, and *People v. Pettinger,* supra, do not support the plaintiff's position. In the former case it appeared that the defendant bored a hole in a railroad box car with an auger, and in that way let out many pounds of grain. In the latter it was held that evidence that defendant broke a window and lifted out through the opening a sales register was sufficient proof of entry. The obvious distinction from the case at bar is that there is no evidence here that the robbery was accomplished either by inserting an instrument in the slit or by putting an arm or any other portion of a man's body through it.

The policy sued on provides that the visible marks of force and violence made by a tool must be ''upon the exterior of the premises *at the place of entry''.* The record shows that the entry was made at a place where there were no such visible marks and that the visible marks were at a different place where there was no entry.

We are of the opinion, therefore, that the evidence does not disclose liability under the terms of the policy and that the court should have directed a verdict for the defendant.

We have seen no cases which conflict with, or throw doubt on, the correctness of this conclusion. *Maryland Casualty Co. v. Nicetown Dye Works,* supra, is distinguishable. The coverage clause in the policy sued on is substantially the same as that in the policy before us with the important exception that it did not provide that the visible marks of force and violence

must be upon the *exterior* of the premises. The case involved the burglary of a wool warehouse. The evidence showed that the original entry was made through a small door and that it was effected by making the watchman open the door at gunpoint. After getting in in this manner the burglars forcibly opened a large door in order to admit into the warehouse their trucks, which they used in moving out the wool. This door was locked on the inside by means of a chain, which was fastened by means of a keeper and a wedge. After the robbery the keeper and several links of the chain were found to be bent and distorted and the wedge was missing. The court held that the evidence was sufficient to support a judgment for the assured, saying:

"It is contended the policy was not breached because the entry to the warehouse was through the small door and there were no consequent marks of violence. But this contention overlooks the fact that it was not the entry through the small door, but the entry of the burglars with their trucks through the broken-open rolling door that brought about the loss of the wool. The breaking open of that door, the pushing out of the plaintiff's two trucks into the yard, the entry of the burglar's truck and the loading of the bales, the entire time the considerable gang of men used in effecting the burglary, *was the real entry which brought about the loss*. Of this burglarious entry through the broken-open roller door there were 'visible marks upon the premises at the place of such entry by tools.' " (Italics added.)

Since there was no requirement in the policy that there must be visible marks made upon the exterior of the premises, the visible marks upon the interior of the large door were sufficient to satisfy the provisions of the policy in that regard. The court stated in its opinion that these marks were made at the place of

entry by tools, and it must be that the evidence showed that that was the fact. Indeed, it would seem to be a fair inference that the links of a chain heavy enough to secure so large a door could not be bent and distorted without the use of tools of some sort. There is no evidence in the instant case from which it could be concluded that the bar could not be bent without the use of tools, and no evidence of any visible marks upon the bar made by tools or otherwise. On the contrary, there was affirmative evidence coming from a police officer, who investigated the robbery and was called as a witness by the plaintiff, that the bar was not bent by the use of tools and that he found no evidence of use of tools on the exterior of the premises.

Nor is the case of *Aetna Casualty & Surety Co. v. Reliable Auto Tire Co.,* 58 F2d 100 (CCA 8th), cited by plaintiff, in point, for there the evidence showed that entrance to a building had been gained by sawing a wooden crossbar which covered a window. The visible marks at the place of entry of force and violence used in making the entry were the bar which had been sawed and the sawdust.

A final contention of the plaintiff calls for only brief notice. A provision of the policy reads:

"15. Statutory Provisions. Any and all provisions of this policy which are in conflict with the statutes of the state wherein this policy is issued are understood, declared and acknowledged by this company to be amended to conform to such statutes."

It is argued that the definition of burglary in the policy conflicts with the statutory definition of burglary (ORS § 164.240), and, therefore, that the policy must be deemed amended so as to cover a case of burglary as defined by statute. To state the proposition

is to answer it. The statutory definition of burglary does not control the provisions of insurance contracts, and the policy does not attempt to change the criminal law of Oregon. There is no law, statutory or otherwise, which prohibits the parties to a contract of insurance from agreeing that the liability assumed by an insurance company shall be limited in the manner provided in the policy involved in this case.

The judgment is reversed and the cause remanded with instructions to enter judgment for the defendant.