Argued and submitted January 16, affirmed May 9, reconsideration denied June 29, petition for review allowed July 24, 1984 (297 Or 492)
See 298 Or 765, 696 P2d 1082 (1985)

TOTTEN,
*Appellant,*

*v.*

NEW YORK LIFE INSURANCE CO.,
*Respondent.*

(A8209-05575; CA A28617)

680 P2d 1021

Emerson G. Fisher, Portland, argued the cause for appellant. With him on the briefs was Garry L. Kahn, P.C., Portland.

Don G. Carter, Portland, argued the cause for respondent. With him on the brief were Robert D. Rankin, and McEwen, Hanna, Gisvold, Rankin & VanKoten, Portland.

Before Richardson, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

### WARREN, J.

Plaintiff appeals from a summary judgment for defendant in this action to recover accidental death benefits on a life insurance policy. We affirm.

On May 9, 1982, Dale Totten was pronounced dead by drowning after the hang glider he was operating landed in the ocean. In May, 1980, the deceased purchased a life insurance policy from defendant in the face amount of $25,000, with an additional accidental death benefit of $25,000, naming his wife, Kristi Totten, plaintiff in this action, as primary beneficiary. After Totten's death, defendant paid the face amount but denied plaintiff's claim for benefits under the accidental death benefit portion of the policy, based on the following exclusion clause:

> "The accidental death benefit is not payable if the insured's death is contributed to or caused by:
>
> "* * * * *
>
> "3. Traveling in or descending from any aircraft, if the insured at any time during the aircraft's flight acted in any capacity other than as a passenger."

Plaintiff, as beneficiary, then filed this action, seeking to recover the accidental death benefits. In granting defendant's motion for summary judgment, the trial court concluded that the insurer was entitled to judgment as a matter of law, because (1) a hang glider is an "aircraft" as that term is used in the subject insurance policy, and (2) death by drowning following the crash of a hang glider into the ocean is "contributed to or caused by * * * traveling in or descending from any aircraft." Plaintiff claims error as to both of those issues.

█ The dispositive issue is whether a reasonably intelligent person reading this exclusion to the accidental benefits payment would have understood the term "aircraft" to include a "hang glider." Plaintiff claims that the definition of "aircraft" contained in ORS 492.010(4), which specifically excludes a "one-person motorless glider which is launched from the earth's surface solely by the operator's power," should be incorporated into the policy by a clause entitled "Conformity with Law," which reads: "This policy is subject to all applicable laws." We are not persuaded. We construe the

conformity clause, routinely included in policies of insurance, to incorporate only those sections of the Oregon Revised Statutes directly applicable to the issuance and content of insurance policies, *see, e.g.,* ORS 743.159 to 743.252, and not to each and every section of the entire Oregon Revised Statutes. *See Farmers Insurance Exch. v. Colton,* 264 Or 210, 213-14, 504 P2d 1041 (1972).

■    ORS 492.010(4), defining aircraft, is part of the statutory scheme covering Aeronautics Administration, Airports and Landing Fields, Airport Operation and Airport Districts. The purpose of ORS chapter 492 is solely to regulate aeronautics in Oregon and does not concern insurance, construction of insurance policies or general usage of the term "aircraft." The statute itself provides that the definitions in ORS 492.010 apply "when used in the laws of this state relating to aeronautics." The definition of "aircraft" contained in ORS 492.010(4) was amended in 1975 (Or Laws 1975, ch 755, § 1) to exclude hang gliders from the requirements for licensing of pilots and regulation of airports. Nothing in that legislative action can be construed as a recognition that a hang glider is not commonly included in the definition of "aircraft." *See* 37 Op Att'y Gen 465 (1975). Neither are we persuaded by the fact that ORS 492.010(4) coincides with the policies and definitions adopted by the Federal Aviation Administration. The purpose of the FAA regulations is, again, the regulation of air travel, not insurance coverage. Under these circumstances, we conclude that the trial court was correct in refusing to apply ORS 492.010(4). *Compare Term. News Stand, Inc. v. General Cas. Co.,* 203 Or 54, 64, 278 P2d 158 (1954) (statutory definition of burglary does not control over provision of insurance policy defining burglary).

■■    The test we apply in the interpretation of this policy exclusion is what a reasonably intelligent and careful person in the position of the insured would have understood the words of the policy exclusion to mean. *Botts v. Hartford Acc. & Indem. Co.,* 284 Or 95, 100, 585 P2d 657 (1978); *Pope v. Benefit Trust Life Ins. Co.,* 261 Or 397, 400, 494 P2d 420 (1972); *Borglund v. World Ins. Co.,* 211 Or 175, 181, 315 P2d 158 (1957); *State Farm Mutual Auto. Ins. Co. v. White,* 60 Or App 666, 672, 655 P2d 599 (1982), *rev den* 294 Or 569 (1983). The word "aircraft," as defined in Webster's New International Dictionary (3rd ed 1976), is typical of such authorities:

"A weight-carrying machine or structure for flight in or navigation of the air and designed to be supported by the air either by the buoyancy of the structure or the dynamic action of the air against its surfaces — used of airplanes, balloons, helicopters, kites, kite balloons, orthopters, and gliders but chiefly of airplanes or aerostats."

We conclude that this definition represents the common understanding of "aircraft," and we find no general purpose definition of "aircraft" that restricts its meaning to motorized or passenger vehicles or excludes hang gliders for any other reason. A fair and reasonable reading of the policy exclusion supports the conclusion that the policy was intended to exclude accidental death benefits from the operation of a vehicle, such as a hang glider, designed for air travel, when the insured was acting in any capacity other than as a passenger. *See Fielder v. Farmer New World Life Ins. Co.*, 435 F Supp 912 (CD Cal 1977) (same result where the insured died as a result of injuries sustained in a crash of a hang glider under policy excluding death as a result of "travel or flight in or descent from any kind of aircraft").

Plaintiff argues that the different definitions of "aircraft" amount to an ambiguity which should be construed in favor of the insured. We find no ambiguity. The two types of definitions described in this case are a result of the different functions they are intended to fulfill. It is appropriate in the insurance context to apply the common understanding of "aircraft." The special definition of "aircraft" which excludes gliders from that term to exempt them from regulations as aircraft should not be applied in a context where regulation is not involved. We conclude that the risk sought to be avoided by the exclusion for death "contributed to or caused by * * * traveling in or descending from any aircraft" is the same as that involved in flying a hang glider and that a reasonable person purchasing the policy in question would have understood that he would not be covered for death while flying a hang glider.

■ Plaintiff further claims that the causal connection between Totten's death and his use of a hang glider is a question of fact and is not appropriate for summary judgment. The policy says that the exclusion applies when the insured's death was "contributed to or caused by" the excluded accident. The undisputed evidence presented established that the

insured died by drowning after his hang glider landed in the ocean. Under these circumstances, the trial judge correctly concluded that there was no genuine issue as to any material fact relevant to disputing defendant's claim that the hang glider contributed to Totten's death and that summary judgment was appropriate under ORCP 47C.

In a second assignment of error, plaintiff claims that the trial court erred in failing to grant her motion to reconsider. There is no merit in that claim.

Affirmed.

**ROSSMAN, J.,** dissenting.

I am dismayed but not surprised by the resolution of this case. It is becoming a habit of this court to ignore the well-established and time-honored rule of law that insurance contracts are to be construed liberally in favor of the insured. *See Mortgage Bancorp. v. New Hampshire Ins. Co.,* 67 Or App 261, 677 P2d 726 (1984). I dissent here for the same reason that I dissented there.

Succinctly stated, the rule we should be applying is:

> " 'The language used in a contract of insurance is entitled to a construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed to support a view that will protect the insured and prevent forfeiture. [Citations omitted.]' *Schweigert v. Beneficial Life Ins. Co.,* 204 Or 294, 301, 282 P2d 621 (1955)." *O'Neill v. Standard Insurance,* 276 Or 357, 361, 554 P2d 997 (1976).

In other words, if a term is susceptible to more than one meaning, every reasonable doubt will be resolved in favor of extending coverage. *Western Fire Insurance Co. v. Wallis,* 289 Or 303, 308, 613 P2d 36 (1980); *Allen v. Continental Casualty Co.,* 280 Or 631, 633, 572 P2d 617 (1977). The rule is especially applicable in cases involving exclusionary clauses, such as we have in this case. *See Stanford v. American Guaranty Life Ins. Co.,* 280 Or 525, 527, 571 P2d 909 (1977); *United Pac. Ins. v. Truck Ins. Exch.,* 273 Or 283, 293, 541 P2d 448 (1975).

Because I believe that the construction being advanced here by plaintiff is a reasonable one, I would follow

the clear Oregon authority and construe the insurance contract in favor of coverage and against the insurer.

Therefore, I respectfully dissent.