Argued and submitted September 5, 1984, affirmed March 6, 1985

TOTTEN,
*Petitioner on Review,*

*v.*

NEW YORK LIFE INSURANCE CO.,
*Respondent on Review.*

(A8209-05575; CA A28617; SC S30836)

696 P2d 1082

Emerson G. Fisher, Portland, argued the cause and filed the petition for petitioner on review.

Don G. Carter, Portland, argued the cause and and filed the response for respondent on review. With him on the response was McEwen, Hanna, Gisvold & Rankin, and Robert D. Rankin, Portland.

CAMPBELL, J.

CAMPBELL, J.

The sole issue in this petition for review is whether the term "any aircraft" in the exclusion clause of a life insurance policy includes a hang glider.[1] We hold that a hang glider is included in the term "any aircraft."

In May 1980, Dale Totten purchased an insurance policy from the defendant, New York Life Insurance Co., insuring his life in the face amount of $25,000. The policy also contained an accidental death benefit in the additional sum of $25,000. Dale Totten's wife, Kristi A. Totten, was named the primary beneficiary.

On April 9, 1982, Dale Totten died by drowning when the hang glider he was operating crashed into the ocean near Cape Lookout State Park in Tillamook County.

Kristi A. Totten, as beneficiary under the life insurance policy, furnished the defendant with a proof of loss. The defendant paid the face amount of the policy, but denied the accidental death benefits on the grounds the policy in part provided:

"The accidental death benefit is not payable if the insured's death is contributed to or caused by:

"* * * * *

"(3)   Traveling in * * * any aircraft, if the insured at any time during the aircraft's flight acted in any capacity other than as a passenger."

The plaintiff then filed this action to recover the accidental death benefits. The defendant in its answer set out the above quoted exclusion clause. The plaintiff moved for a partial summary judgment and the defendant moved for a summary judgment. The trial court entered a summary judgment for the defendant. It in effect held that a hang glider is "any aircraft" as that term is used in the exclusion clause of

---

[1] In the Court of Appeals, the plaintiff also raised the issue of whether, as a matter of law, death by drowning following the crash of a hang glider into the ocean was "contributed to or caused by * * * traveling in * * * any aircraft" within the exclusion clause of the life insurance policy. The Court of Appeals affirmed the trial court's summary judgment that the death was contributed to or caused by traveling in an aircraft. On petition for review by this court, the plaintiff has not claimed that this issue was erroneously decided by the Court of Appeals. ORAP 10.15. Therefore, we do not consider it.

the subject life insurance policy. The plaintiff appealed to the Court of Appeals. That court affirmed the trial court. 68 Or App 235, 680 P2d 1021 (1984).

The plaintiff filed a petition for review in this court. We allowed the petition to determine if the Court of Appeals had departed from the "well-established and time-honored" rules of law on the construction of insurance policies.[2] We find that the Court of Appeals applied the correct rules of law in construing the insurance policy question.

The plaintiff's position breaks down into two parts: (1) The conformity clause incorporates into the policy the definition of "aircraft" contained in ORS 492.010(4); and (2) the term "aircraft" as it is used in the exclusion clause is ambiguous and therefore should be construed in favor of the insured.

The policy in part provides: "Conformity with law. This policy is subject to all applicable laws."

The statute to which the plaintiff refers is:

"ORS 492.010. When used in the laws of this state relating to aeronautics,[3] unless the context otherwise provides:

"(4) 'Aircraft' means any contrivance used or designed for navigation of or flight in the air, *but does not mean a one-person motorless glider which is launched from the earth's surface solely by the operator's power.*" (Emphasis added.)

ORS 492.010(4) was amended in 1975 by adding the part emphasized above. Or Laws 1975, ch 755, §1. The

---

[2] The phrase "well-established and time-honored" is borrowed from Judge Rossman's dissent in the Court of Appeals. 68 Or App 253, 258, 680 P2d 1021 (1984). The plaintiff has adopted the same phrase in the reasons for review in her petition in this court. She said in part: "This case should be reviewed because it signals a change, by the Court of Appeals, of the well-established and time-honored rule of construction construing insurance contracts liberally in favor of the insured."

[3] ORS 492.010(2) is as follows:

"(2) 'Aeronautics' means the science and art of flight and including but not limited to transportation by aircraft; the operation, construction, repair or maintenance of aircraft, aircraft power plants and accessories, including the repair, packing and maintenance of parachutes; the design, establishment, construction, extension, operation, improvement, repair or maintenance of airports or other air navigation facilties; and instruction in flying or ground subjects pertaining thereto.

legislative history shows that the only purpose of the amendment was to exclude hang gliders from the requirements of the Aeronautics Administration for the licensing of pilots and regulation of airports, thereby allowing the Parks and Recreation Division of the Department of Transportation to be the only agency regulating the use of hang gliders in the state parks.[4] We agree with the Court of Appeals that there is nothing in the legislative history to indicate a change in the common definition of aircraft for other purposes.[5]

■       The question boils down to: Is the life insurance policy "subject" to the laws of this state which relate to aeronautics? To say it another way: Is the language in the life insurance policy relating to "aircraft" to be interpreted through application of the laws of this state that are connected with the science and art of flight? We answer in the negative. We agree with the Court of Appeals who construed the conformity clause "to incorporate only those sections of the Oregon Revised Statutes directly applicable to the issuance and content of insurance policies, *see, e.g.,* ORS 743.159 to 743.252, and not to each and every section of the entire Oregon Revised Statutes."[6]

Our conclusion is supported by *Term. News Stand, Inc. v. General Cas. Co.,* 203 Or 54, 278 P2d 158 (1954). In that case the plaintiff operated a confectionery and newsstand in a bus depot in Portland. The defendant had issued an insurance policy by which it had agreed to indemnify the plaintiff for any loss resulting from burglary by force and violence. The policy required the proof of force and violence "shall be visible marks made upon the exterior of the premises at the place of entry, by tools * * *." The plaintiff's business was burglarized, but there were no visible marks of the entry on the exterior of the premises. The defendant refused to pay the loss. The plaintiff contended that under the following provision of the policy the statutory definition of burglary should apply:

"15.   Statutory Provisions. Any and all provisions of this

---

[4] House Committee on Transportation hearing on HB 3268. May 7, 1975.

[5] *See also* Op Att'y Gen 465 (1975) which may have triggered the 1975 amendment to ORS 492.010(4).

[6] ORS 743.159 to 743.252 include such subjects as: payment of premium, grace period, incontestability, statements of insured, misstatement of age, dividends, policy loan, maximum interest rate and settlement options.

policy which are in conflict with the statutes of the state wherein this policy is issued are understood, declared and acknowledged by this company to be amended to conform to such statutes." *Id* at 64.

The trial court denied the defendant's motions for a judgment of involuntary nonsuit and for a directed verdict. The defendant appealed from a jury verdict and this court reversed and in part held:

"It is argued that the definition of burglary in the policy conflicts with the statutory definition of burglary (ORS 164.240), and, therefore, that the policy must be deemed amended so as to cover a case of burglary as defined by statute. To state the proposition is to answer it. The statutory definition of burglary does not control the provisions of insurance contracts, and the policy does not attempt to change the criminal law of Oregon. There is no law, statutory or otherwise, which prohibits the parties to a contract of insurance from agreeing that the liability assumed by an insurance company shall be limited in the manner provided in the policy involved in this case." *Id* at 64.

The second part of the plaintiff's contention is that the term "aircraft," as it is used in the exclusion clause of the policy, is ambiguous and therefore should be construed in her favor. The defendant answers that the term "aircraft" is not ambiguous and that the following common definition of the term set out in Webster's New International Dictionary (3d ed 1976) controls:

"A weight-carrying machine or structure for flight in or navigation of the air and designed to be supported by the air either by the buoyancy of the structure or the dynamic action of the air against its surface—used of airplanes, balloons, helicopters, kites, kite ballons, orthopters, and gliders but chiefly of airplanes or aerostats."

The primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties. *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.,* 202 Or 277, 273 P2d 212, 275 P2d 226, (1954).[7] The terms of a writing

---

[7] *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.,* 202 Or 277, 320, 273 P2d 212, 275 P2d 226 (1954), also explained the relationship between the primary rule to ascertain and declare the intention of the parties and the rule that ambiguous terms are to be construed in favor of the insured:

"However, we do not wish to be understood as deviating in the slightest degree

are presumed to have been used in their primary and general acceptation. ORS 42.250. We interpret the terms of an insurance policy according to what we perceive to be the understanding of the ordinary purchaser of insurance. *Botts v. Hartford Acc & Indem Co.,* 284 Or 95, 100, 585 P2d 657 (1978). "Also any ambiguity in an exclusionary clause is strictly construed against the insurer." *Stanford v. American Guaranty Life Ins. Co.,* 280 Or 525, 527, 571 P2d 909 (1977).

The plaintiff relies on *Shadbolt v. Farmers Insur. Exch.,* 275 Or 407, 410, 551 P2d 478 (1976):

> "We have said, however, that when words or terms of a general nature are used in an insurance policy, such words or terms may be ambiguous, in the legal sense, when they could reasonably be given a broader or narrower meaning, depending upon the intention of the parties in the context in which such words are used by them."

The plaintiff in effect is arguing that the term "aircraft" is a general term and therefore is ambiguous in a legal sense because it could be given either a broader or narrower meaning. The plaintiff takes her argument one step further by saying that because the term "aircraft" is ambiguous, she is entitled to have the term liberally construed in her favor and that it should be given a narrow meaning. Thus, if the term "aircraft" is given a narrow interpretation, hang gliders would be eliminated from the exclusion clause.

The problem with the plaintiff's argument is that the clause in the insurance policy does not exclude merely "aircraft" but excludes "any aircraft." In other words, the parties by agreeing upon the term "any aircraft" have given the exclusion clause a broad meaning. *Shadboldt v. Farmers Insur. Exch., supra,* does not help the plaintiff. In *Argonaut Insurance Co. v. Ketchen,* 243 Or 376, 382, 413 P2d 613, 19 ALR3d 1386 (1966), this court considered a clause in a liability insurance contract that excluded "any employee" from coverage. There we said:

> from the firmly-established rule in this state that where the construction of an insurance policy containing ambiguous language is involved, the provisions should be liberally construed in favor of the insured. Nevertheless, as indicated, the rule must be considered in the light of other equally well-established rules of construction, and, particularly, in the light of the primary rule above stated. Its application must lead to a sound conclusion under all the facts and circumstances in issue."

"We hold, as the trial court did, that it [the term 'any employee'] means any kind of an employee, regardless of classification. It encompasses all kinds of employees. It is not an ambiguous term and covers a special or casual employee as well as a regular one."

We went on to hold that the adjective "any" is an adequate term to express the idea of "every," citing *Reed v. Reed,* 215 Or 91, 96, 332 P2d 1049 (1958), and *Pugsley v. Smyth,* 98 Or 448, 478, 194 P 686 (1921).

■ We hold that the term "any aircraft" is not ambiguous when applied to the circumstances of this case. Applying the above rules of construction we hold that the parties intended that the term "any aircraft" was to be given its ordinary dictionary meaning and includes hang gliders.[8] It follows that operating a hang glider is not a risk covered by the accidental death benefit clause of the policy. The Court of Appeals was correct in affirming the trial court who granted the defendant a summary judgment. The Court of Appeals is affirmed.

---

[8] In *Fielder v. Farmers New World Life Ins. Co.,* 435 F Supp 912 (CD Cal 1977), the insured died when the hang glider he was operating crashed. The court held that the risk was not covered because of an exclusion clause in the policy which provided:

"Risk Not Assumed: Death of Insured resulting from travel or flight in * * * any kind of aircraft."

*See also Wilson v. Insurance Company of North America,* 453 F Supp 732 (ND Cal 1978); *Fireman's Fund American Life Insurance Company v. Long,* 148 Ga App 216, 251 SE2d 133 (1978); *Deschler v. Fireman's Fund American Life Ins.,* 663 P2d 97 (Utah 1983); *Scarboro v. Pilot Life Ins. Co.,* 242 NC 444, 88 SE2d 133, 54 ALR2d 407 (1955).