Argued and submitted August 29, 2012, affirmed November 20, 2013, petition for review denied January 30, 2014 (354 Or 735)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS WERNER MEIER,
*Defendant-Appellant.*

Multnomah County Circuit Court
100343558; A147141

314 P3d 359

Jonah Morningstar, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for unlawful possession of a firearm under ORS 166.250 and assigns error to the trial court's denial of his motion to suppress. He argues that the officer's discovery of a valid arrest warrant did not purge the taint of his unlawful stop of defendant because the officer did not receive adequate notice of the warrant's existence to satisfy ORS 133.310(2) and did not show defendant the outstanding warrant as required by ORS 133.235(3). We hold that the officer received the requisite notice of the outstanding warrant and that he was not required to show defendant the outstanding warrant under these circumstances. Accordingly, we affirm.

Where, as here, the facts are undisputed, we review the trial court's application of the law to those facts for legal error. *State v. Ehly,* 317 Or 66, 75, 854 P2d 421 (1993). A Gresham police officer responded to a dispatch call at about 12:30 a.m. based on a citizen report of a car driving with flat tires. The officer found a car with two flat tires parked against a curb and approached to investigate whether the driver might have been driving under the influence of intoxicants (DUII). The car was not running, and the officer knocked on the window to wake defendant, who was sleeping in the driver's seat. Without asking any questions, the officer requested defendant's identification, used it to run a search on the computerized Law Enforcement Data System (LEDS) and National Crime Information Center (NCIC)[1] databases, and discovered a Clackamas County warrant for defendant's arrest. Another officer then placed defendant under arrest and conducted a pat-down search, which led to the discovery of a handgun in defendant's back pocket.

After being charged with unlawful possession of a firearm, defendant moved to suppress evidence of the handgun. The trial court denied that motion based on its conclusion that, although defendant was unlawfully stopped because the officer did not have reasonable suspicion of DUII, the taint of the illegal stop was purged by the intervening

---

[1] The NCIC is maintained by the United States Department of Justice. For ease of reading, we refer solely to LEDS with the understanding that the LEDS and NCIC systems are linked.

discovery of the arrest warrant under *State v. Dempster*, 248 Or 404, 434 P2d 746 (1967). In that case, the Supreme Court held that an arrest based on an outstanding warrant can serve to attenuate the link between unlawful police conduct and subsequently discovered evidence, thereby purging that evidence of the taint of the prior unlawful conduct so that suppression is not required. Following the trial court's application of *Dempster*, defendant entered into a conditional guilty plea pursuant to ORS 135.335(3).

On appeal, defendant argues that he was unlawfully seized in violation of Article I, section 9, of the Oregon Constitution because the officer stopped him without reasonable suspicion that he had committed a crime. He contends that the officer's discovery of the outstanding arrest warrant did not attenuate the discovery of the incriminating evidence from the initial unlawful stop under *Dempster* because the officer did not lawfully arrest him under ORS 133.310(2), which reads as follows:

> "A peace officer may arrest a person without a warrant when the peace officer is notified by telegraph, telephone, radio or other mode of communication by another peace officer of any state that there exists a duly issued warrant for the arrest of a person within the other peace officer's jurisdiction."

Defendant argues that in *State v. Bentz*, 211 Or App 129, 158 P3d 1081 (2007), this court concluded that *Dempster* does not apply where an officer violates ORS 133.310(2) by failing to confirm the validity of an arrest warrant before conducting a search incident to arrest. Defendant maintains that, in this case, the LEDS database report of an outstanding warrant is not the legal equivalent of an officer "actually being 'notified' that there is a valid warrant for the individual's arrest" as required by the statute. Defendant contends that, in order to comply with ORS 133.310(2), an officer must verify the existence of the warrant with the issuing agency before making the arrest. Defendant further argues that, in *Bentz*, this court ruled that an underlying arrest is invalid when *any* statute governing arrests is violated and that, here, the arrest was also unlawful because the officer violated ORS 133.235(3) by not showing defendant the arrest warrant.

The state responds that, even if the officer's initial stop of defendant was unlawful, the officer's discovery of an outstanding warrant dissipated the taint of any prior illegality. The state contends that defendant's reliance on *Bentz* is misplaced because, there, the court held only that *Dempster* did not apply when an officer learned of an out-of-state warrant directly from a defendant, and, here, the officer learned of the in-state warrant from a law enforcement database. Accordingly, the state contends that *Dempster* applies and that the discovery of the outstanding warrant purged the taint of the stop if the stop was unlawful.

We first address the state's argument that *Bentz* is not controlling in this case. In *Bentz*, a police officer entered a private residence without a warrant. 211 Or App at 131. During questioning, the defendant informed the officer that there was an outstanding warrant for his arrest. *Id.* at 132. Relying solely on the defendant's word as to the existence and validity of the warrant, the officer arrested and searched the defendant. *Id.* This court explained that the officer "had authority to conduct a warrantless search incident to arrest only if the arrest itself was lawful." *Id.* at 139. We explained that, under ORS 133.310(2), "a police officer receiving notice of an out-of-state warrant from the person named in the warrant, and not from a police officer, does not have authority to arrest the person" without first verifying the existence of the warrant. *Id.* We therefore concluded that, if the warrant was from out of state, until the officer verified its existence under ORS 133.310(2), the arrest would not have been lawful. *Id.* We did not have occasion to decide whether ORS 133.310(2) applies to an in-state warrant, because the record in *Bentz* did not establish whether the warrant in that case was from out of state. *Id.* at 139-40.

Although the officer in this case learned of the outstanding warrant from LEDS rather than from defendant, we note that in *Bentz* we explicitly reserved the issue of whether ORS 133.310(2) applies to an in-state warrant; the case before us requires that we address that issue. Whether that statute applies when the "duly issued warrant" was issued in Oregon is a question of statutory interpretation. When construing a statute, we examine the text of that

statute in context, along with any helpful legislative history, in order to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

ORS 133.310(2) provides that an officer may arrest an individual without a warrant if the officer "is notified by * * * another peace officer of *any state* that there exists a duly issued warrant." (Emphasis added.) In *Bentz*, we declined to address the issue of whether "any state" refers to any state *other than* Oregon, or whether it refers to all states *including* Oregon. The word "any" is commonly understood to mean "one indifferently out of more than two." *Webster's Third New Int'l Dictionary* 97 (unabridged ed 2002). It is often used "as a function word [especially] in interrogative and conditional expressions to indicate one that is not a particular or definite individual of the given category but whichever one chance may select." *Id.* That definition indicates that the term "any" is broadly inclusive, a fact that Oregon appellate courts have historically recognized. *See, e.g., Totten v. New York Life Ins. Co.*, 298 Or 765, 771, 696 P2d 1082 (1985) (use of the term "any aircraft" as opposed to simply "aircraft" was intended to give an insurance policy's exclusion clause a broad meaning); *Oregon State Denturist Assn. v. Board of Dentistry*, 172 Or App 693, 702, 19 P3d 986 (2001) (the legislature's use of the article "any" indicated an intent that the definition be "broadly inclusive"). In ORS 133.310(2), the use of the term "any" suggests that the legislature intended to broadly refer to states in general, not a "particular or definite [one]." *See Webster's* at 97. Therefore, "any state" in ORS 133.310(2) refers to all 50 states, including Oregon.

We also agree with defendant that the legislative history supports the conclusion that the legislature intended "any state" in ORS 133.310(2) to include all 50 states. Defendant points to House Bill (HB) 1510 (1963), which amended ORS 133.310(2) by replacing the term "this state" with the term "any state." Or Laws 1963, ch 448, § 1. Defendant contends that the purpose of HB 1510 was to protect public safety by allowing officers to arrest individuals under a broader range of circumstances. Defendant argues

that a construction of the term "any state" that excludes Oregon is inconsistent with that goal, especially because the statute's previous term, "this state," limited officers to making arrests based only on notification by peace officers located in Oregon. We agree.

Accordingly, we must address whether the officer, upon discovering an outstanding warrant for defendant's arrest in the LEDS database, had sufficient notice of the warrant to support defendant's arrest without a warrant under ORS 133.310(2). The answer to that question depends on whether the computerized LEDS database qualifies as an "other mode of communication" and, if so, whether receiving information through the LEDS database constitutes notification by "another peace officer" as those terms are used in ORS 133.310(2). We answer both questions in the affirmative.

The phrase "other mode of communication" follows a list of other means by which information can be transmitted ("telegraph, telephone, radio"). ORS 133.310(2). A computer, much like a telegraph, is an electronic device that can receive and transmit information from one source to another over long distances through the Internet. In this case, the officer used a computer to run the warrant check through the LEDS database, which was created to "provide[] a criminal justice *telecommunications* and information system for the State of Oregon." OAR 257-015-0010 (emphasis added). This database allows "record storage and [has] retrieval capabilities." OAR 257-015-0040. It follows that receiving information via a computer using the LEDS database constitutes being "notified by other mode of communication" within the meaning of ORS 133.310(2).

We turn next to the second question—whether receiving information through the LEDS database constitutes notification by "another peace officer." A "member of the Oregon State Police" is a peace offer within the meaning of the statute, ORS 133.005, and LEDS is maintained by the Oregon State Police. *See* ORS 181.730 (establishing LEDS); OAR 257-015-0000 - 257-015-0100 (describing LEDS). In *State v. Roderick*, 250 Or 452, 455-56, 443 P2d 167 (1968), the Supreme Court considered whether a prior version of

ORS 133.310(2)[2] required that a peace officer be notified personally by a police officer of another state holding the warrant. The court explained, "[T]he purpose of the statute is to cooperate with and assist other states in the swift apprehension and arrest of wanted criminals * * *." 250 Or at 455. Consequently, the court found that

"[t]o hold that the statute requires that the information received by a peace officer in this state must come directly from the peace officer himself and not from someone reliably believed to be his agent, is not only absurd, but would infringe upon the purpose for which the statute was enacted."

*Id.* at 456. That reasoning and the general purpose of the statute lead to a similar conclusion here: Because the LEDS database is maintained by the Oregon State Police and was created to maintain information about criminal records and to transmit that information to peace officers, notification by the LEDS database of an arrest warrant is sufficient notification to support a warrantless arrest under ORS 133.310(2).

Defendant argues, finally, that the arrest (and therefore the search) in this case was unlawful because the arresting officer failed to show him a copy of the arrest warrant before arresting him as required by ORS 133.235(3). That statute provides:

"The officer shall inform the person to be arrested of the officer's authority and reason for the arrest, and, if the arrest is under a warrant, shall show the warrant, unless the officer encounters physical resistance, flight or other factors rendering this procedure impracticable, in which

---

[2] At the time the Supreme Court decided *State v. Roderick*, ORS 133.310(2) was numbered ORS 133.310(4) and provided:

"A peace officer may arrest a person without a warrant:

"* * * * *

"(4) When he is notified by telegraph, telephone, radio or other mode of communication by another peace officer of any state that such peace officer *holds in his hands* a duly issued warrant for the arrest of such person charged with a crime committed within his jurisdiction."

ORS 133.310(4) (emphasis added). In 1973, that statute was renumbered ORS 133.310(2) and the phrase "holds in his hands" was deleted. *See* Or Laws 1973, ch 836, § 72.

case the arresting officer shall inform the arrested person and show the warrant, if any, as soon as practicable."

ORS 133.235(3). Defendant's argument is, in effect, that it is "practicable" for an officer proceeding under ORS 133.310(2) to delay the arrest until a copy of the outstanding warrant can be obtained. However, that interpretation is in conflict with the plain text of ORS 133.310(2), which permits an officer to take a person "into custody * * * without a warrant" under appropriate circumstances. *See* ORS 174.010 (courts have an obligation to construe statutes in a manner that gives effect to all of their provisions). For that reason, we reject defendant's proposed interpretation of the statute.

To summarize, when a "duly issued warrant" has been issued in *any* state, including Oregon, and that information is transmitted to a peace officer by the LEDS and NCIC computerized databases, that peace officer has received the requisite notification under ORS 133.310(2). Accordingly, even if we assume that defendant initially was unlawfully seized, the officer was sufficiently notified of the outstanding warrant, and the search incident to his arrest without a warrant was lawful. The trial court did not err in denying defendant's motion to suppress.

Affirmed.