Argued and submitted August 10, 2000, declaratory ruling as to construction and applicability of ORS 680.500(3) reversed; declaratory ruling as to validity and applicability of proposed OAR 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(10) and OAR 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(13) set aside February 28, 2001

# OREGON STATE DENTURIST ASSOCIATION,
## *Petitioner,*
### *v.*
# BOARD OF DENTISTRY,
## *Respondent.*
## (CA A101822)
### 19 P3d 986

Randall H. Baker argued the cause for petitioner. With him on the briefs was Casteel & Carson.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy

Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

E. Walter Van Valkenburg, Jeremy D. Sacks and Stoel Rives LLP filed a brief *amicus curiae* for the Oregon Dental Association.

Before Haselton, Presiding Judge, and Deits, Chief Judge,\* and Wollheim, Judge.

HASELTON, P. J.

---

\* Deits, C. J., *vice* De Muniz, P. J., resigned.

## HASELTON, P. J.

The Oregon State Denturist Association (OSDA) seeks review of the Oregon Board of Dentistry's (Board) modified declaratory ruling, ORS 183.410, that determined, *inter alia*, that certain dental appliances were not "dentures" as defined in ORS 680.500(3), and that the Board's proposed interpretive rules were "consistent with" that statutory definition. In particular, the Board concluded that "dentures" mean "prosthetic dental appliances that replace all of the teeth in either the upper or lower jaw of the patient and that rest solely on soft tissue." OSDA contends that that construction is erroneously constrictive and that the statutory term encompasses all prosthetic appliances that replace all of the upper or lower teeth regardless of whether the appliance rests on soft tissue—*i.e.*, the term also includes appliances that rest on, or are attached to, dental implants or teeth remnants.[1] We agree with OSDA that the Board erroneously construed ORS 680.500(3) in issuing its declaratory ruling as to the application of that statute to particular devices and related practices. We further conclude that the Board was without authority under ORS 183.410 to issue a declaration as to the validity and application of *proposed* rules. Accordingly, we reverse the declaratory ruling as to the meaning and application of ORS 680.500(3) and set aside the declaration pertaining to the proposed rules.

The central issue is one of statutory construction, *viz.*, the scope of "denture" as defined in ORS 680.500(3).

---

[1] The Board described "dental implants" as follows:

"A dental implant is a prosthetic device comprised of a housing that is implanted within the jawbone. Superstructural support posts fit in the housing and extend up above the gumline. Implant housing is made of biocompatible materials that bond with human bone and tissue. Implants act as anchors for dentures and eliminate the instability associated with surface adhesives. A dentist surgically places the implants directly into or on top of the jawbone. Small posts which are attached to the implants protrude through the gums. The posts provide the stable anchors for artificial replacement teeth."

The Board also described "retained roots" as:

"A retained root is the portion of the tooth that remains in the jaw after the crown of the tooth is removed. Roots are retained to help maintain the bone structure and to enhance the fit of complete dentures. The retained roots may project above the gum line or the retained roots may be entirely covered by soft tissue."

We do not understand OSDA to dispute either of those descriptions.

That statute, which was enacted by initiative in 1978, provides:

" 'Denture' means any removable full upper or lower prosthetic dental appliance to be worn in the human mouth."

Before directly addressing the merits, it is useful to put the parties' dispute into historical context, which at least collaterally bears on the context of the statute itself. *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 416-17, 908 P2d 300 (1995), *on recons* 325 Or 46, 932 P2d 1141 (1997); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993).

Historically, as a general rule, only licensed "dentists" could practice "dentistry"[2] in Oregon. *See* Annotated Laws of Oregon, v II, ch XXXVII, § 3339 (Hill 1887);[3] The Codes and Statutes of Oregon, v II, ch VIII, § 3835, p 1293 (Bellinger & Cotton 1902) (enlarging the scope of those actions for which the state imposed criminal liability).[4] That

---

[2] ORS 679.010(2) provides:

·  " 'Dentistry' means the healing art which is concerned with the examination, diagnosis, treatment planning, treatment, care and prevention of conditions within the human oral cavity and maxillofacial region and conditions of adjacent or related tissues and structures. The practice of dentistry includes but is not limited to the cutting, altering, repairing, removing, replacing or repositioning of hard or soft tissues and other acts or procedures as determined by the board and included in the curricula of dental schools accredited by the Commission on Dental Accreditation of the American Dental Association, postgraduate training programs or continuing education courses."

[3] That section provided, in part:

"It shall be unlawful for any person to practice, or attempt to practice, dentistry or dental surgery in the state of Oregon without first having received a diploma from the faculty of some reputable dental college, school, or university department * * *[.]"

[1] That section provided:

"Any person who, as principal, agent, employer, employee, assistant, or in any manner whatever, shall practice dentistry, or who for reward or hire shall do any act of dentistry, without having filed for record and having recorded in the office of the county recorder of the county wherein he shall so practice or do such act a certificate from said board of dental examiners entitling him to so practice, shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than fifty dollars nor more than two hundred dollars, or be confined for any period not exceeding six months in the county jail, for each and every offense. All fines recovered under this act shall be paid into the common school fund of the county in which conviction is had."

principle—again subject to limited exceptions—continues to be recognized and enforced under current statutes, including those forbidding the unauthorized practice of dentistry. *See* ORS 679.020(1) ("No person shall practice dentistry without a license."); ORS 679.025(1) ("It shall be unlawful for any person not otherwise authorized by law to practice dentistry or purport to be a dentist without a valid license to practice dentistry issued by the Oregon Board of Dentistry."). In 1978, Oregon voters passed Ballot Measure 5, subsequently codified at ORS 680.500 to ORS 680.572, which exempted "denturists" from the "dentist-only" principle. *See* Or Laws 1979, ch 1. The initiative was an omnibus measure that, in addition to defining "dentures" and "practice of denture technology"[5] and explicitly exempting "denturists * * * engaged in the practice of denture technology" from the unauthorized-practice proscriptions of ORS 679.025,[6] also included licensure and oversight provisions. *See* ORS 680.575 to ORS 680.567.

The initiative's overarching purpose, as described in the measure's explanation, was to change then-current Oregon law, under which "only licensed dentists [could] take impressions of the human mouth to make, fit or repair dentures" and any denturist's work was required to be performed under a dentist's supervision. *See* Official Voter's Pamphlet, General Election, 32 (November 7, 1978) (Explanatory Statement to Measure No. 5). Under the measure, "Denturists and people who are assisting them under a supervised educational program could make, repair and fit dentures and make impressions of the human mouth necessary for full upper and lower dentures without the supervision of a dentist." *Id.* The various arguments in favor of the initiative, submitted by parties including the Oregon State Council of Senior Advocates, the AFL-CIO, and Governor Bob Straub, reiterated

---

[5] ORS 680.500(5) provides:

" 'Practice of denture technology' means:

"(a) Constructing, repairing, relining, reproducing, duplicating, supplying, fitting or altering any denture in respect of which a service is performed under paragraph (b) of this subsection; and

"(b) The taking of impressions, bite registrations, try-ins, and insertions of or in any part of the human oral cavity for any of the purposes listed in paragraph (a) of this subsection."

[6] *See* ORS 679.025(2)(k).

that theme of breaking dentists' "monopoly" on dentures, and, consequently, realizing significant savings, particularly for older persons on fixed incomes.[7] The measure was enacted with 78 percent of the vote.[8]

In 1990, the Board issued a policy statement providing that only "an appliance placed in a mouth that does not have tooth structure or replacements, *i.e.*, 'implants' is a 'denture.'"[9] In 1991 the Oregon Dental Association sought to amend ORS 680.500 to incorporate the Board's policy-statement definition of "denture." *See* HB 3423-4 (1991). The legislature ultimately took no action on that proposal. In early 1997 the Board proposed two administrative rules whose consideration precipitated this declaratory ruling proceeding. First, proposed OAR 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(10) provides:

> " 'Removable full upper or lower prosthetic device' means an appliance placed in a mouth that does not have tooth structure or replacements; *i.e.*, implants. Bridges and dentures retained through attachment to or placement upon teeth or implants do not fall within this definition."

Second, proposed OAR 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(13) provides that it is unprofessional conduct for a licensee to

---

[7] The Oregon State Council of Senior Advocates asserted:

"This measure is one of freedom of choice and economics. There is no good reason why the public must be forced to pay double prices for dentures when well-trained, competent, safe service can be available at a lower price." *Id.* at 33.

The argument by Oregon COPE, AFL-CIO was that:

"Measure #5 will help senior citizens living on a fixed income stretch their monthly pension checks by substantially reducing the cost of dentures.

"* * * * *

"Because of this monopoly, most dentists charge extremely high fees for a full set of dentures." *Id.*

Similarly, Governor Bob Straub argued that:

"Dentures are a costly item that hit seniors especially hard. Currently, many people cannot afford to have their dentures repaired by a dentist or to buy new dentures when they need them." *Id.* at 34.

[8] The vote tally was 704,280 (for) and 201,463 (against). *Oregon Blue Book*, 303 (1999-2000).

[9] That statement also noted that a denturist who places or attaches a denture on or about a root structure or implants is practicing dentistry without a license in violation of ORS 679.140 and ORS 679.170.

"[a]id, abet, facilitate or assist any person other than a dentist licensed by the Board to place or fit full or partial prosthetic appliances where the appliance is placed on tooth structure or implants or attached to teeth or implants."

In response, in March 1997, OSDA filed a petition pursuant to ORS 183.410. As ultimately framed, OSDA's petition sought rulings as to whether "dentures," as defined in ORS 680.500(3), were limited to appliances supported solely by soft tissue, and whether the Board's proposed rules were consistent with the ORS 680.500(3) statutory definition.[10] The Board answered both questions affirmatively. The core of the Board's ruling was its construction of the term "full" in the statutory definition of "denture":

"The common meaning of the term 'full' is:

" 'a: containing all that possibly can be placed or put within * * *; b: having the normal or intended capacity supplied or accommodated: entirely occupied * * *; c: Occupying completely the requisite space * * *; d: Possessed of the normal or appropriate complement[.]'

"See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 918-919 (unabridged 1993).

"In light of these common usages, we conclude that the people intended the definition of 'denture' to apply to a prosthetic dental appliance that replaces all of the teeth (the normal complement) in either the upper or lower jaw. The dental appliance must be a full or complete denture. Thus, a denturist may not place a 'partial' dental appliance. *Additionally, we conclude that the full dental appliance must entirely or completely occupy the requisite space.* A dental appliance that rests on any retained tooth structure that projects above the gum line does not entirely or completely occupy the space of the natural teeth. Likewise, a dental appliance that attaches to dental implants does not entirely or completely occupy the space from which the natural teeth have been removed. On the other hand, a dental appliance that rests on soft tissue (where neither retained roots nor dental implants project above the gums) satisfies

---

[10] OSDA also asked for a declaratory ruling as to whether the Board must consider the statute in promulgating its rules, to which the Board answered in the affirmative. The Board's ruling on that issue is not a point of contention in this appeal.

the requirement that the appliance entirely or completely occupy the space from which the natural teeth have been removed. We conclude, therefore, that the people intended to limit denturists to placing prosthetic dental appliances that replace all of the teeth in either the upper or lower jaw of the patient and that rest solely on soft tissue." (Emphasis added.)

OSDA challenges that determination and further assigns error to the Board's consequent ruling that its proposed rules conformed to the statutory definition. OSDA contends that the plain common meaning of a "full" denture is one that replaces all of the upper or lower teeth; that the statutory definition does not modify that unambiguous term by reference to "requisite space," "retained tooth structures," or "soft tissue"; and that the Board, by construing ORS 680.500(3) as incorporating such limitations, has impermissibly "inserted what has been omitted" from the statute. ORS 174.010. We consider, in turn, OSDA's challenges to the Board's construction of ORS 680.500(3) and to the Board's declaration pertaining to the proposed rules.[11]

██ ORS 680.500(3) defines "denture" as:

"any removable full upper or lower prosthetic dental appliance to be worn in the human mouth."

As noted, that definition was enacted by initiative. In construing measures enacted through initiative, we attempt to discern the intent of the voters. *Ecumenical Ministries v. Oregon State Lottery Comm'n,* 318 Or 551, 559, 871 P2d 106 (1994). The best evidence of the voters' intent is the text of the law itself. *Id.* Thus, the first step of our analysis is to examine the text and the context of the statutory provision. *Id.* at 560. If the intent of the voters is clear from that examination, our analysis is at an end. *Id.*

We return to the text of ORS 680.500(3) and to its commonly understood meaning. At the time this initiative was enacted, "denture" was defined in common usage as "a set of teeth. An artificial replacement of one, several or all of

---

[11] OSDA also argues that the Board's declaratory ruling was impermissibly based on facts outside the stipulated facts of the administrative record. We do not reach or resolve that matter.

the natural teeth * * * compare bridge." *Webster's Third New Int'l Dictionary*, 603 (unabridged ed 1976). The referenced definition of "bridge" is "a partial denture." *Id.* at 276. "Full" is defined as:

"a: containing all that possibly can be placed or put within * * *; b: having the normal or intended capacity supplied or accommodated: entirely occupied * * *; c: Occupying completely the requisite space * * *; d: Possessed of the normal or appropriate complement[.]" *Id.* at 918-19.

Illustrative examples for the usage of that definition included: a *full* bus; a *full* house; a *full* cargo; and a *full* audience. *Id.* at 919.

In the abstract, "full" connotes any of those alternative meanings, including the third alternative, which underlies the Board's construction. But "full" does not exist in the abstract; it is an adjective whose meaning must be discerned by reference to the noun it modifies: a *full* glass (as opposed to an empty one); a *full* deck (as opposed to one missing a card or two). In the context of a set of items, "full" has only one reasonable meaning: "possessed of the normal or appropriate complement." Simply: a complete set. To define a full deck of cards as "completely occupying the requisite space" normally occupied by a deck of cards would defy common understanding.[12]

Here, "full" modifies "upper or lower prosthetic dental appliance to be worn in the human mouth." Regardless of whether Oregon voters fully understood the term "prosthetic dental appliance," they doubtless shared the common understanding of "denture" as a replacement for a "set of teeth." So understood, "full" stands in contradistinction with "partial" — a "full" upper or lower denture replaces the entire set of upper or lower teeth. A "partial" denture replaces fewer than a complete set. That common lay person's understanding accords with "term of art" definitions in generally accepted medical references of the time. *See* W. A. Newman Dorland, *The American Illustrated Medical Dictionary*, 412 (21st ed 1948).[13]

---

[12] When used in the sense of a "full glass," "full" modifies what is being filled (the glass), not what is doing the filling (the water). Here, what is being filled is the *mouth*, not the denture.

[13] That dictionary makes the following distinction in its definition of denture:

■ Nothing in the context of the 1978 initiative, as now codified at ORS 680.500 to ORS 680.572, contradicts or detracts from that plain meaning. Indeed, the use of the term "any" in ORS 680.500(3) indicates that that definition is broadly inclusive. Nothing in the statutory text or context supports the Board's restrictive reading of "full." We thus conclude that the statutory text and context are unambiguous and that the definition of "denture" in ORS 680.500(3) encompasses any removable prosthetic dental appliance that replaces all of the teeth in either the upper or lower jaw regardless of whether that appliance rests solely on soft tissue. The Board erred as a matter of law in rendering its declaratory ruling to the contrary, and we reverse that ruling. ORS 183.480(8)(a).

■ We proceed to the second assignment of error, which challenges the Board's ruling that its proposed rules do not conflict with ORS 680.500 to ORS 680.572. We conclude that the Board lacked authority to render that ruling and, consequently, we set aside that ruling.

ORS 183.410 provides, in relevant part:

> "On petition of any interested person, any agency may in its discretion issue a declaratory ruling with respect to the applicability to any person, property, or state of facts *of any rule or statute enforceable by it.* * * * Binding rulings provided by this section are subject to review in the Court of Appeals in the manner provided in ORS 183.480 * * *." (Emphasis added.)

ORS 183.410 permits an agency to render a declaratory ruling only as to the applicability of those statutes and rules that the agency can enforce. Proposed rules are just that—proposed, not enforceable. Because those rules are not "enforceable by" the Board, the Board could not issue any declaration as to their applicability. *See Gaynor v. Board of Parole*, 165 Or App 609, 612, 996 P2d 1020 (2000) ("[A]n administrative body possesses only those powers that the legislature grants, and it cannot exercise authority that it does

---

"*full d*[enture]., a structure replacing the full number of natural teeth of both jaws * * *[.]

"*partial d*[enture]., a structure supporting less than the full number of teeth in one jaw * * *[.]"

not possess."). Consequently, we set aside the Board's ruling concerning its proposed rules.

Declaratory ruling as to construction and applicability of ORS 680.500(3) reversed; declaratory ruling as to validity and applicability of proposed OAR 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(10) and OAR 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(13) set aside.