Argued and submitted August 19, 2011, vacated and remanded with instructions
to enter a judgment affirming DLCD's order May 9, petition for review denied
September 13, 2012 (352 Or 377)

Delbert HOEKSTRE,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
by and through the
Department of Land Conservation and Development,
*Respondent-Respondent.*

Polk County Circuit Court
09P10334; A144992

278 P3d 123

Wallace W. Lien argued the cause for appellant. With him on the briefs was Wallace W. Lien, P.C.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Petitioner appeals a judgment dismissing his petition for judicial review of a final order and home site authorization of respondent, the State of Oregon through the Department of Land Conservation and Development (DLCD). That order authorized three existing parcels on petitioner's property and the establishment of two additional dwellings under section 6(2) of Ballot Measure 49 (2007) but denied him an additional—that is, a fourth—parcel under section 6(3).[1] On appeal, petitioner contends that, because the remedies in section 6(2) and section 6(3) are cumulative, a qualified claimant is entitled to receive authorization for "one additional lot, parcel or dwelling" under section 6(3) regardless of the remedy, if any, to which the claimant is entitled under section 6(2). As explained below, we reject petitioner's contention and conclude that the reviewing court did not err in determining that DLCD correctly construed section 6(3). However, we also conclude that, as a procedural dispositional matter, the court erred in dismissing the petition for judicial review rather than affirming DLCD's order. Accordingly, we vacate the judgment and remand the case to the reviewing court with instructions to enter a judgment affirming DLCD's order.

We begin by describing the legal framework that provides the necessary context for understanding DLCD's order and the parties' contentions in this case. In 2004, Ballot Measure 37 was enacted through the initiative process. As the Supreme Court explained in *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 224-25, 264 P3d 1265 (2011) (*Friends*),

> "[t]hat measure provided landowners with 'just compensation' for land use regulations, enacted after they had acquired their property, that restricted the use of the property and, as a result, diminished its value. *See State ex rel English v. Multnomah County*, 348 Or 417, 420-22, 238 P3d 980 (2010) (describing Measure 37). When faced with a claim for 'just compensation' under Measure 37, a government could choose: (1) to pay the landowner compensation

---

[1] The pertinent text of section 6 of Measure 49 is set out below. 249 Or App at 630-31.

for the diminished value of the property and enforce the regulation or (2) to waive the regulation and permit the owner to use the property for a use permitted at the time the owner acquired the property.

"Measure 37 * * * was not without controversy. Some believed that the measure went farther than many voters had intended in that it not only permitted landowners to build a small number of additional homes on their property, unrelated to the resource use of the land, but it also authorized the large-scale development of formerly protected lands. *See* Official Voters' Pamphlet, Special Election, Nov 6, 2007, 20 (Legislative Argument in Support of Measure 49). In response to those concerns, the 2007 Legislative Assembly considered several draft bills intended to reform Measure 37. After several public hearings, those draft bills were consolidated into a single bill, House Bill 3540 (2007). *See* Tape Recording, Joint Special Committee on Land Use Fairness, HB 3540, Apr 26, 2007, Tape 50, Side A (statement of Sen Greg Macpherson). The legislature did not enact HB 3540 directly; instead, it referred the proposed legislation to the voters on June 15, 2007, as Ballot Measure 49. *See* Or Laws 2007, ch 750, § 2 (referring HB 3540 to the voters). In a special election held on November 6, 2007, the voters approved Measure 49 and, on December 6, 2007, the measure became effective.

"Among other things, Measure 49 retroactively extinguished previously issued Measure 37 waivers of land use regulations. *See Corey v. DLCD*, 344 Or 457, 466-67, 184 P3d 1109 (2008) ('Measure 49 by its terms deprives Measure 37 waivers—and *all* orders disposing of Measure 37 claims—of any continuing viability'; emphasis in original). As a result, landowners who had begun developing their property under authorization granted by Measure 37 waivers could no longer automatically continue to do so. *Instead, those landowners had to choose one of three alternative 'pathways' moving forward: an 'express pathway,' a 'conditional pathway,' and 'a third pathway for claimants that have vested rights to carry out claims that have already been approved.'* Tape Recording, Joint Special Committee on Land Use Fairness, SB 1019, Apr 19, 2007, Tape 43, Side A (statement of Richard Whitman, Oregon Department of Justice, summarizing the proposed 'framework' for amending Measure 37); *see* Or Laws 2007, ch 424, § 5 (setting out those three alternatives).

"The express pathway entitles a landowner to obtain development approval for up to three additional homes on his or her property. *See* Or Laws 2007, ch 424, § 5(1) (identifying express pathway). Under the conditional pathway, a landowner can obtain approval for four to 10 homes if, among other conditions, the land use regulations prohibiting the construction of those homes resulted in a specified reduction of the fair market value of the property. *See id.* §§ 7 and 9 (setting out conditional pathway and describing conditions). Finally, the vested rights pathway permits a landowner who had obtained a Measure 37 waiver to 'complete and continue the use described in the waiver,' provided that the landowner could also demonstrate a 'common law vested right' to complete that use. *Id.* § 5(3)."

(Some internal quotation marks and citations omitted; emphasis added.)

As described by the Supreme Court, this case concerns the "express pathway," which is set out in section 6 of Measure 49.[2] Pursuant to section 6(1), if a claimant establishes certain qualifying prerequisites, the claimant is *"eligible* for three home site approvals on the property" described in a Measure 37 claim.[3] (Emphasis added.)

However, the actual number of lots, parcels, or dwellings that may be approved under section 6 is governed by sections 6(2) and 6(3). Specifically, section 6(2) provides, in part:

---

[2] Measure 49 was amended in 2009. Or Laws 2009, ch 855. Those amendments do not affect our analysis in this case. For that reason, throughout this opinion, references to "Measure 49" are to the version in effect after the 2009 amendments. For convenience, we note that the pertinent text is compiled as a note following ORS 195.305 in the 2009 compilation of the Oregon Revised Statutes.

Further, Measure 49 was amended again in 2010. Or Laws 2010, ch 8 (Spec Sess). Those amendments became effective after DLCD issued its order and the trial court entered its judgment. In all events, those amendments do not affect our analysis.

[3] For purposes of Measure 49, a "home site approval" is the "approval of the subdivision or partition of property or approval of the establishment of a dwelling on property." ORS 195.300(12). Further, as pertinent here, "property" refers to "the private real property described in a *claim*," ORS 195.300(20) (emphasis added), and, in turn, a "claim" is a Measure 37 claim, *see* ORS 195.300(2)(a) (providing, as pertinent, that a "claim" refers to "a written demand for compensation filed under * * * ORS 195.305, as in effect immediately before December 6, 2007"); *see also former* ORS 197.352 (2005) (Measure 37), *amended by* Or Laws 2007, ch 424, § 4, *renumbered as* ORS 195.305 (2007).

"The number of lots, parcels or dwellings that may be approved for property under this section may not exceed the lesser of:

"(a) The number of lots, parcels or dwellings described in a waiver issued by the state before December 6, 2007 * * *; or

"(b) Three, except that if there are existing dwellings on the property or the property contains more than one lot or parcel, the number of lots, parcels or dwellings that may be established is reduced so that the combined number of lots, parcels or dwellings, including existing lots, parcels or dwellings located on or contained within the property, does not exceed three."

Further, section 6(3)—the interpretation of which is at the heart of the parties' dispute in this case—provides, in part:

"Notwithstanding subsection (2) of this section, a claimant that otherwise qualifies for relief under this section may establish at least one additional lot, parcel or dwelling on the property."

In light of that legal framework, we turn to the undisputed, material facts. Petitioner owns approximately 12.75 acres in Polk County with an existing dwelling. Petitioner obtained Measure 37 waivers from DLCD and the county, which allowed him to divide his property into three parcels and to place a dwelling on each parcel. Consistently with those waivers, petitioner partitioned his property into three parcels.

Thereafter, the voters approved Measure 49. Petitioner then sought to have his Measure 37 claim reviewed under Measure 49. Specifically, petitioner filed a Measure 49 election form with DLCD in which, pursuant to section 6, he requested the "approval of three (3) home sites, including the existing dwelling on one of the home sites, on his 12.75 acre parcel, and to partition the property accordingly[.]"

In its preliminary evaluation, DLCD determined that petitioner "qualifie[d] for up to three home site approvals" under section 6 of Measure 49 and was entitled to the three existing parcels and the establishment of two additional dwellings on the property. In practical terms, DLCD

essentially determined that petitioner was entitled to the three existing parcels and a total of three dwellings—that is, the existing dwelling and the establishment of two additional dwellings. In response, as pertinent to the issues on appeal, petitioner contended that, "because he already had three parcels at the time of the Measure 49 application," he was "entitled to an additional parcel under [section 6(3)]."

Following the submission of petitioner's comments, DLCD issued its final order and home site authorization. Consistently with its preliminary evaluation, DLCD determined that petitioner was entitled to his three existing parcels and to the establishment of two additional dwellings under section 6(2) but was not entitled to an additional parcel under section 6(3). DLCD explained that

"[petitioner] qualifies for up to three home sites. However, the number of lots, parcels or dwellings that a claimant may establish pursuant to a home site authorization is reduced by the number of lots, parcels or dwellings currently in existence on the Measure 37 claim property and any contiguous property under the same ownership according to the methodology stated in Section 6(2)(b) and 6(3) of Measure 49.

"Based on the documentation provided by the claimant and Polk County, the Measure 37 claim property includes three lots or parcels and one dwelling. There is no contiguous property under the same ownership. Therefore the three home site approvals [petitioner] qualifies for under Section 6 of Measure 49 will authorize * * * the three existing lots or parcels and [the] establish[ment of] up to two additional dwellings on the Measure 37 claim property."

Petitioner sought judicial review of DLCD's order.[4] On review, the parties' contentions essentially reduced to a single legal issue—that is, whether section 6(3) of Measure 49 allows a qualified claimant to establish "one additional lot, parcel or dwelling" regardless of the relief, if any, that the claimant received under section 6(2). For his part, petitioner

_____

[4] See ORS 195.318(1) (providing, in part, that "[a] person that is adversely affected by a final determination of a public entity under * * * sections 5 to 11, chapter 424, Oregon Laws 2007, sections 2 to 9 and 17, chapter 855, Oregon Laws 2009, * * * may obtain judicial review of that determination * * * under ORS 183.484, if the determination is one of a state agency"); ORS 183.484 (providing for judicial review of orders in other than contested cases).

contended that the text of section 6(3)—and, in particular, the "notwithstanding" clause—demonstrated that a qualified claimant is entitled to one additional lot, parcel, or dwelling regardless of the relief that the claimant receives under section 6(2).[5]

DLCD remonstrated that, contrary to petitioner's contention, Measure 49 "does not authorize cumulative relief under Sections 6(2) and 6(3)." Instead, DLCD explained that, under section 6, "[r]elief, if any, is limited to either a) a total of three lots or parcels and three dwellings which must be offset by existing development; or b) one home site approval to otherwise qualified claimants who are not entitled to relief under Section 6(2)." In support of that contention, DLCD explained that it was in agreement with petitioner that the "notwithstanding" clause in section 6(3)

"creates an exception to [Section] 6(2) such that the limitations of [Section] 6(2) do not apply. However, the first sentence further explains that claimants must also 'otherwise qualif[y].' The placement of the phrase 'otherwise qualifies' immediately following an explicit reference to Section 6(2) means that the word 'otherwise' directly refers to Section 6(2). The phrase 'otherwise qualifies' therefore refers to those persons who do not qualify under Section 6(2) but do satisfy all other criteria set forth in [the pertinent sections of Measure 49]."

(Third brackets in original.)

After reviewing the text, context, and enactment history of the measure, the reviewing court concluded that DLCD had properly interpreted section 6(3) and that, based

[5] Petitioner also contended that DLCD had "effectively added a new criteri[on] for approval not contained in the text of Measure 49" when it noted in its order that a qualified claimant "must have had at least three lots or parcels and three dwellings at the time of the Measure 37 application" in order to receive an additional lot, parcel, or dwelling under section 6(3). However, contrary to petitioner's contention, in applying section 6, DLCD focused on the number of lots, parcels, or dwellings on petitioner's property at the time of his Measure 49 application—that is, after petitioner had partitioned his property consistently with his Measure 37 waivers to create three parcels. Specifically, as noted above, in resolving petitioner's Measure 49 claim, DLCD stated that its determination was "[b]ased on the documentation provided by the claimant and Polk County [that] the Measure 37 claim property includes three lots or parcels and one dwelling."

on that interpretation, petitioner was not entitled to the additional, fourth parcel that he sought. Ultimately, the court entered a judgment dismissing the petition for judicial review.

Petitioner appeals pursuant to ORS 183.500.[6] On an appeal pursuant to ORS 183.500, our function is to determine whether the circuit court correctly applied the standards of its review under ORS 183.484. *Inbound v. Dept. of Forestry*, 241 Or App 619, 625 n 2, 252 P3d 336, *rev den*, 350 Or 716 (2011); *Powell v. Bunn*, 185 Or App 334, 338-39, 59 P3d 559 (2002), *rev den*, 336 Or 60 (2003). One of those standards requires the reviewing court to determine whether "the agency has erroneously interpreted a provision of law." ORS 183.484(5)(a). In practical terms, then, we—as did the reviewing court—review to determine whether DLCD misconstrued section 6(3). *See G.A.S.P. v. Environmental Quality Commission*, 198 Or App 182, 187, 108 P3d 95, *rev den*, 339 Or 230 (2005) ("In practical effect, * * * we directly review the agency's order for compliance with the standards set out in ORS 183.484(5).").

In that regard, the parties essentially reiterate the legal contentions that they raised in the reviewing court concerning the proper construction of section 6(3). As previously noted, 249 Or App at 629, Measure 49 was referred to and approved by the voters. For that reason, in construing section 6(3), we attempt to discern the voters' intent by examining the text and context of section 6(3), which is the "best evidence" of that intent, *Oregon State Denturist Assn. v. Board of Dentistry*, 172 Or App 693, 700, 19 P3d 986 (2001), as well as any pertinent enactment history, *see State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (when interpreting a statute, to determine legislative intent, a court examines the text and context of the statute as well as pertinent legislative history proffered by a party). Relevant history includes the ballot title and explanatory statement in the voters' pamphlet. *See Shilo Inn v. Multnomah County*, 333 Or 101,

---

[6] ORS 183.500 provides that an appeal of the judgment following judicial review of an order in other than a contested case "shall be taken in the manner provided by law for appeals from the circuit court in suits in equity."

129-30, 36 P3d 954 (2001), *modified on recons*, 334 Or 11, 45 P3d 107 (2002).

As petitioner correctly asserts, the "notwithstanding" clause in section 6(3) is textual support for the proposition that a qualified claimant is entitled to an additional lot, parcel, or dwelling under section 6(3) regardless of the remedy, if any, that the claimant received under section 6(2). As petitioner explains,

"[t]he language of Section 6(3) is plain and unambiguous and provides a cumulative remedy to Section 6(2). Section 6(3) begins with the language that its provisions are in spite of the three lot/dwelling limitation stated in Section 6(2), and that upon qualification, the claimant is entitled to 'one additional lot' for a total of four."

At first blush, petitioner's construction of the statute appears to be plausible. However, as amplified below, when viewed in the context of Measure 49 as a whole and in light of the measure's enactment history, it becomes apparent that petitioner's construction of section 6(3)—which allows some qualified claimants to obtain approval for *four* lots, parcels, or dwellings under section 6 of Measure 49—is incorrect.

Measure 49 "modif[ied] Measure 37 to give landowners who [had] filed Measure 37 claims the right to build homes as compensation for land use regulations imposed after they acquired their properties." Official Voters' Pamphlet, Special Election, Nov 6, 2007, 19 (Explanatory Statement). To that end, a landowner was required to choose one of three alternative pathways: (1) the "express pathway"; (2) the "conditional pathway"; and (3) the "vested rights pathway." *Friends*, 351 Or at 225 (describing pathways).

Section 6 governs the "express pathway." Regardless of the actual number of lots, parcels, or dwellings that a qualified claimant receives under sections 6(2) and 6(3), section 6(1) explicitly provides that the maximum number of home site approvals for which a qualified claimant is *eligible* is three. Measure 49, § 6(1) (providing, in part, that a qualified claimant "is *eligible* for three home site approvals on the property" (emphasis added)). The enactment materials confirm that the voters intended that development under the "express pathway" was limited to three approvals. Voters'

Pamphlet at 19 ("Claimants may build *up to three homes* if allowed when they acquired their properties." (Emphasis added.)).

By contrast, under the "conditional pathway"—which is governed, in part, by section 7 of Measure 49—qualified claimants are eligible for four to 10 home site approvals. However, as the Supreme Court explained, to obtain relief under the "conditional pathway," the landowner must establish that "the land use regulations prohibiting the construction of those homes resulted in a specified reduction of the fair market value of the property." *Friends*, 351 Or at 225. Further, the enactment history demonstrates that the voters understood that, to be eligible for more than three home sites, a claimant had to demonstrate a reduction in property value to justify those additional home sites. *See* Voters' Pamphlet at 19 ("Claimants may build up to 10 homes if allowed when they acquired their properties and they have suffered reductions in property values that justify the additional home sites.").

The "express pathway" as described in section 6 appears to have been designed to strike a balance between compensating certain landowners for diminished property values and protecting farmland, forestland, and ground water supplies. As noted in the explanatory statement, Measure 49 "protects farmlands, forestlands and lands with groundwater shortages." Voters' Pamphlet at 19. Specifically, the statement explains that, under Measure 49, "subdivisions are not allowed on high-value farmlands, forestlands and groundwater-restricted lands. *Claimants may not build more than three homes on such lands.*" *Id.* (emphasis added); *see also id.* at 7 (as explained in the ballot title summary, under Measure 49, "[c]laimants may build up to three homes if previously allowed when they acquired their properties, four to 10 homes if they can document reductions in property values that justify additional homes, *but may not build more than three homes* on high-value farmlands, forestlands and groundwater-restricted lands" (emphasis added)).

The fundamental problem with petitioner's construction of section 6(3) is that it would allow a qualified

claimant who is entitled to three lots, parcels, or dwellings under section 6(2) to receive an additional—that is, *fourth*—lot, parcel, or dwelling under section 6(3). That would be so even if the property were high-value farmland or forestland or ground-water restricted land. As we have explained, the enactment history demonstrates that such a construction of section 6(3) clearly contradicts the voters' intent.

That deficiency does not exist in DLCD's construction of section 6(3). According to DLCD, if a claimant is not entitled to relief under section 6(2), then "notwithstanding [section 6(2)]," a claimant who "otherwise qualifies for relief under [section 6] may establish at least one additional lot, parcel or dwelling on the property." Four salient observations suffice to demonstrate that DLCD's interpretation of section 6(3)—which effectively prohibits a claimant from obtaining more than three approvals under section 6—is consistent with the text of that provision in the context of Measure 49 as a whole as well as the measure's enactment history.

First, DLCD's construction of section 6(3) is consistent with the text of section 6(1), which provides that the maximum number of home site approvals for which a qualified claimant is *eligible* under section 6 is three. Second, consistently with the voters' intent to protect high-value farmland and forestland and ground-water restricted land and to limit development on those lands, DLCD's construction of section 6(3) ensures that a qualified claimant will never receive more than three home site approvals under section 6. Third, consistently with the requirements of the "conditional pathway" as described in section 7, DLCD's construction ensures that a qualified claimant who seeks more than three approvals must demonstrate the requisite reduction in property value that justifies those additional home sites. Fourth, DLCD's construction ensures that a qualified claimant who is not entitled to relief under section 6(2) will receive at least some compensation, which was one of the purposes underlying Measure 49. *See* Voters' Pamphlet at 19 (explaining that Measure 49 "modif[ied] Measure 37 to give landowners who [had] filed Measure 37 claims the right to build homes as compensation for land use regulations imposed after they acquired their properties"). Accordingly, the reviewing court

did not err in determining that DLCD properly construed section 6(3).[7]

Ordinarily that would conclude our appellate review—that is, having concluded that the reviewing court properly determined that DLCD did not misconstrue the applicable law, we would simply affirm. However, the circumstances of this case are not ordinary.

Here, as we have previously noted, 249 Or App at 633-34, the reviewing court *dismissed* the petition for judicial review. That is not something that the reviewing court could do. ORS 183.484(5)(a) provides, in pertinent part, that, on judicial review, "[t]he court may affirm, reverse or remand the order." Accordingly, we vacate the reviewing court's judgment and remand the case to the court with instructions to enter a judgment affirming DLCD's order.

Vacated and remanded with instructions to enter a judgment affirming DLCD's order.

---

[7] To the extent that petitioner contends that, under DLCD's construction of section 6(3), he is entitled to an additional parcel and dwelling, we disagree. As we understand it, petitioner contends that, because, at the time that he sought relief under Measure 49, he had already partitioned the property into three parcels and he had obtained approval for three dwellings—that is, he had a Measure 37 waiver approving three dwellings—he did not effectively receive relief under section 6(2) and, thus, he is entitled to the alternative remedy in section 6(3).

The short answer to petitioner's contention is that he received relief under section 6(2)—*viz.*, pursuant to section 6(2), DLCD authorized petitioner's three existing lots and the establishment of two additional dwellings. *See Friends*, 351 Or at 224-25 ("Among other things, Measure 49 retroactively extinguished previously issued Measure 37 waivers of land use regulations. As a result, landowners who had begun developing their property under authorization granted by Measure 37 waivers could no longer automatically continue to do so. Instead, those landowners had to choose one of three alternative 'pathways' moving forward[.]" (Citation omitted.)); *Corey*, 344 Or at 465 ("Measure 49 * * * extinguish[ed] and replace[d] the benefits and procedures that Measure 37 granted to landowners.").