No. 630 September 5, 2024 725

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

MARK MEISTER,
*Plaintiff-Appellant,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
*Defendant-Respondent.*

Lincoln County Circuit Court
21CV14232; A177870

Amanda R. Benjamin, Judge.

Argued and submitted February 13, 2023.

Aruna A. Masih argued the cause and filed the briefs for appellant.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

On appeal in an other than contested case, ORS 183.484 and ORS 183.500, plaintiff[1] seeks review of a final order of the Public Employees Retirement System (PERS) that calculated his retirement benefits. In a single assignment of error, plaintiff asserts that PERS, which is administered by defendant the Public Employees Retirement Board (PERB), incorrectly computed his retirement benefits when it applied the salary cap provision in ORS 238.005(26)(c)(M), which became effective January 1, 2020, to his final employment check issued in January 2020. Plaintiff asserts that applying the salary cap to that paycheck excluded his lump-sum payment for accrued vacation leave and compensatory time (comp-time) from the calculation of his final average salary, and, because those hours accrued before the salary cap went into effect, that was an unconstitutional retroactive application of the salary cap. We conclude that PERS correctly applied the salary cap to plaintiff's final employment check as provided in ORS 238.005(26) and that it did not violate the Contract Clause in Article I, section 21, of the Oregon Constitution in doing so. Accordingly, we affirm.

The relevant facts are undisputed. Plaintiff began employment in a PERS-covered position on September 1, 1991, which makes him a Tier One member of PERS. He retired on February 1, 2020, after 28 years and 5 months of credible service in PERS-eligible employment. By check dated January 31, 2020, for the identified pay period of January 16 to 31, 2020, plaintiff was paid a lump-sum payment for accrued vacation leave and comp-time that totaled $21,945.07. During January 2020, plaintiff was also paid for time worked that month, totaling $14,073.52.

On January 1, 2020, Senate Bill 1049 (2019) went into effect, which includes a salary cap for purposes of calculating a member's final average salary, which in turn is used to calculate the owed retirement benefit. *See* Or Laws

---

[1] As the state points out, on judicial review in the circuit court of an order in an other than contested case, ORS 183.484, the party seeking review is meant to be referred to as the petitioner. However, the case caption in this matter both below and on appeal identifies the party seeking review as plaintiff, so we follow that convention in this opinion.

2019, ch 355, §§ 39, 62. The salary cap is codified at ORS 238.005(26)(c)(M), and provides:

> "(c)   'Salary' or 'other advantages' does not include:
>
> "* * * * *
>
> "(M)   For years beginning on or after January 1, 2020, any amount in excess of $195,000 for a calendar year. If any period over which salary is determined is less than 12 months, the $195,000 limitation for that period shall be multiplied by a fraction, the numerator of which is the number of months in the determination period and the denominator of which is 12."

On March 23, 2020, PERS issued a notice of benefits to plaintiff which included a calculation for plaintiff's final average salary based on the last 36 months of salary. For that calculation, PERS capped plaintiff's January 2020 salary at $17,255.04. Plaintiff timely disputed that calculation, arguing that PERS could not apply the salary cap to his lump-sum payment for vacation leave and comp-time, which he argued were accrued balances attributable to service provided to his employer before January 1, 2020. After a review, PERS issued the order at issue here, in which PERS determined that plaintiff's benefit would be decreased by $16.49 per month, because plaintiff's January 2020 salary was required to be capped at $16,249.94. In response to plaintiff's specific dispute, PERS stated that, as a Tier One member of PERS, plaintiff's lump-sum payment is included as salary in the calculation of benefits, but PERS considered that payment to be earned in 2020. Plaintiff sought judicial review of PERS's order in the circuit court, and, on cross-motions for summary judgment, the circuit court entered a judgment in favor of PERB, the governing authority of PERS, ORS 238.630.

Plaintiff appeals, and under ORS 183.500, we review the circuit court's judgment "to determine whether the circuit court correctly applied the standards of its review under ORS 183.484." *Hoekstre v. DLCD*, 249 Or App 626, 634, 278 P3d 123, *rev den*, 352 Or 377 (2012). One of those standards requires the circuit court to determine whether "the agency has erroneously interpreted a provision of law." ORS 183.484(5)(a). As a practical matter, where, as here,

there are no disputes of fact and the issue presented is one of law, we also review to determine whether PERS erroneously interpreted a provision of law. *Hoekstre*, 249 Or App at 634.

On appeal, plaintiff asserts that PERS improperly applied the salary cap to the lump-sum payment for his accrued vacation leave and comp-time because he had earned that leave before the effective date of the salary cap. Plaintiff argues that his accrued vacation leave and comp-time were part of his final average salary as part of his contract with PERS, because those hours are included in the definition of "salary" and "final average salary." Thus, plaintiff asserts that PERS's application of the salary cap was an unconstitutional retrospective application to leave balances that he had earned for work performed before January 1, 2020.

PERB responds that PERS's application of the salary cap to plaintiff's retirement benefit was not a retrospective application because plaintiff's vacation leave and comp-time were not salary until the lump-sum payment was paid to plaintiff. PERB reasons that, because plaintiff did not receive a cash payout until after the effective date of the salary cap, the application of the salary cap was not retrospective.

As we understand it, plaintiff's argument requires us to determine whether PERS's application of the salary cap violated the Contract Clause of Article I, section 21,[2] because, as applied, the salary cap retrospectively impaired a retirement benefit plaintiff earned before January 1, 2020.[3] There are two steps to determining whether legislation violates the Contract Clause of Article I, section 21:

> "First, it must be determined whether a contract exists to which the person asserting an impairment is a party; and, second, it must be determined whether a law of this state has impaired an obligation of that contract."

---

[2] The Contract Clause in Article I, section 21, provides, "No * * * law impairing the obligation of contracts shall ever be passed[.]"

[3] Plaintiff does not cite to Article I, section 21, or any other constitutional provision is his briefing. However, we understand plaintiff's arguments about his "constitutional rights" and reference in the reply brief to the "Contract Clause" to be based on Article I, section 21, and the case law interpreting that provision.

*Hughes v. State of Oregon*, 314 Or 1, 13-14, 838 P2d 1018 (1992) (citing *Eckles v. State of Oregon*, 306 Or 380, 396-97, 760 P2d 846 (1988), *cert dismissed*, 490 US 1032 (1989)).[4] The first step, in turn, requires us to answer three questions, "(1) is there a state contract?; (2) if so, what are its terms?; and (3) what obligations do the terms provide?" *Strunk v. PERB*, 338 Or 145, 170, 108 P3d 1058 (2005) (citing *Hughes*, 314 Or at 17-29); *see also Moro v. State of Oregon*, 357 Or 167, 195-231, 351 P3d 1 (2015) (applying that analysis). The second step then focuses on whether the legislation changes or eliminates the state's obligation under that contract. *Strunk*, 338 Or at 170 (citing *Eckles*, 306 Or at 399-400). "We normally answer those questions by applying general rules of contract law." *Moro*, 357 Or at 194.

The first question of the first step of the inquiry—is there a state contract?—is not at issue, because, as decided in *Hughes*, "PERS was intended to be and is a contract between the [public employer] and its employees[.]" 314 Or at 25; *see also, e.g.*, *Strunk*, 338 Or at 170. As the Supreme Court has explained, "[t]he PERS contract is formed when the employee accepts the offer. An employee 'accept[s] the offer by providing the services' that his or her employer sought, resulting in a unilateral contract. *** And, because the employee accepts the offer through performance, 'a member's acceptance reaches only as far as the work that the member has performed.'" *James v. State of Oregon*, 366 Or 732, 740, 471 P3d 93 (2020) (quoting *Moro*, 357 Or at 198, 201; internal citations omitted).

The second two questions—what are its terms? and what obligations do the terms provide?—ultimately are at the heart of this case. We first address the standard we must apply to determine the contractual terms. "[T]he

---

[4] In his reply brief, plaintiff asserts that ORS 238A.470 applies here. However, contrary to plaintiff's assertion, the Supreme Court recently reaffirmed that ORS 238A.470 does not apply to Tier One members, such as plaintiff, or to Tier Two members. *See James v. State of Oregon*, 366 Or 732, 741 n 2, 471 P3d 93 (2020) ("That [Contract Clause] impairment-of-contract analysis applies to all categories of PERS members, even though OPSRP members are subject to a legislative reservation of rights *that does not apply* to Tier One and Tier Two members." (Emphasis added.)); *see also Moro v. State of Oregon*, 357 Or 167, 218, 351 P3d 1 (2015) ("[R]espondents rely on a reservation of rights provision, ORS 238A.470, that the legislature applied to OPSRP members but not to Tier One and Tier Two members."). Thus, we do not address that argument further.

terms of the statutory PERS contract are a matter of legislative intent and only statutory terms that 'unambiguously evince[ ] an underlying promissory, contractual legislative intent' become a part of the statutory PERS contract." *Arken v. City of Portland*, 351 Or 113, 136, 263 P3d 975, *adh'd to on recons sub nom*, *Robinson v. Public Employees Retirement Board*, 351 Or 404, 268 P3d 567 (2011) (quoting *Hughes*, 314 Or at 26 (second brackets in *Arken*)); *see also Moro*, 357 Or at 202 ("[T]he standard of clear and unmistakable contractual intent applies to both the question of whether there is an offer to form a contract and also to whether a particular provision is a term of that offer."). Not every provision in the PERS statutes is a term of the PERS contract, and the Supreme Court has set out two principles to guide the inquiry:

> "First, because the PERS offer promises remunerative pension benefits as compensation for employment, the offer may include provisions that define the eligibility for benefits or the scope of benefits. * * *

> "* * * [T]he PERS offer does not necessarily include those administrative aspects of PERS as compensation for employment.

> "Second, not all remunerative provisions are terms of the PERS offer. Instead, a remunerative provision will be a term of the offer only if it is mandatory, rather than optional or discretionary."

*Moro*, 357 Or at 204-05.

Here, the parties generally agree that the PERS contract with plaintiff, a Tier One member of PERS, included a term that his lump-sum payment for vacation leave and comp-time would be included as salary for the purposes of calculating plaintiff's final average salary to determine his retirement benefit.[5] *See* ORS 238.435(1) (For persons who established PERS membership after January 1, 1996, as provided in ORS 238.430, "[PERB] shall not include any lump sum payment for accrued vacation pay made to the member during the last 36 calendar months of membership

---

[5] Neither plaintiff nor PERB has suggested that plaintiff's comp-time payment is required to be treated any differently than his vacation-leave payment. As a result, we do not distinguish those payments in our analysis.

\*\*\*."); OAR 459-005-0001(32)(b)(B) ("For a Tier One member, a lump sum payment for accrued vacation pay is considered salary: \*\*\* In determining final average salary for the purpose of calculating PERS benefits."). Plaintiff, however, asserts further that the contract term is that his accrued vacation leave and comp-time itself is part of the definition of "salary" for purposes of calculating his PERS benefits. Plaintiff does not explain how he arrives at that conclusion, and as explained below, we reject it.[6]

We start with a discussion of the statutes at issue, because they define the terms of the PERS contract with plaintiff. *See, e.g.*, *Moro*, 357 Or at 205, 210 (analyzing the wording of the PERS statutes to determine the contract terms). The plain text of the definition of "salary" in ORS 238.005(26)(a) does not support plaintiff's assertion that "salary" included his accrued vacation leave and comp-time. Instead, the definition of salary includes only "renumeration \*\*\* *in cash*." (Emphasis added.) That statute provides, as relevant here:

> "'Salary' means the remuneration paid an employee in cash out of the funds of a public employer in return for services to the employer, plus the monetary value, as determined by the Public Employees Retirement Board, of whatever living quarters, board, lodging, fuel, laundry and other advantages the employer furnishes the employee in return for services."

ORS 238.005(26)(a).[7] That definition of salary has been in place since before plaintiff's hire date in 1991. *See former*

---

[6] Two of the cases cited by plaintiff do not assist his argument, because those cases concerned the terms contained in an employment contract and not the terms of the PERS contract as expressed in the PERS statutes. Furthermore, those cases addressed circumstances not at issue here. *See Harryman v. Roseburg Fire Dist.*, 244 Or 631, 420 P2d 51 (1966) (holding that an employer could not revoke a contract term that had allowed payout of unused accumulated sick leave upon termination of employment with respect to already earned leave); *Brett v. City of Eugene*, 130 Or App 53, 880 P2d 937 (1994), *rev den*, 320 Or 507 (1995) (holding that an employer could apply a prospectively unilateral modification that capped the number of hours of leave an employee could accrue). With respect to *Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 918 P2d 765 (1996), *abrogated by Moro v. State of Oregon*, 357 Or 167, 351 P3d 1 (2015), the Supreme Court disavowed the reasoning employed by that case it its entirety, and we will not rely on it here. *See Moro*, 357 Or at 225.

[7] For the first time at oral argument, plaintiff asserted that "other advantages" could include plaintiff's vacation leave or comp-time. We reject that

ORS 237.003(8)(a) (1991), *renumbered as* ORS 238.005 (1995). When plaintiff accepted the offer of the PERS contract by working, plaintiff was accepting the offer that any renumeration in cash that he received for his public service would be "salary." For Tier One members, that includes lump-sum payments made by public employers to their employees for accrued leave, because such a payment is "remuneration paid an employee in cash," and is not subject to the exclusion that applies to Tier Two members under ORS 238.435(1). At no time did the statutory definition of salary contain a contract offer to plaintiff that his accrued vacation leave and comp-time would be considered salary before they were paid out in cash to plaintiff. That is, plaintiff's accrued leave itself was not a retirement benefit.

Likewise, "final average salary" for purposes of computing retirement benefits includes "salary" that is "paid" to the employee. Final average salary is defined as the greater of:

> "(a)   The average salary per calendar year paid by one or more participating public employers to an employee who is an active member of the system in three of the calendar years of membership before the effective date of retirement of the employee, in which three years the employee was paid the highest salary. \* \* \*.
>
> "(b)   One-third of the total salary paid by a participating public employer to an employee who is an active member of the system in the last 36 calendar months of active membership before the effective date of retirement of the employee."

ORS 238.005(9). Here, PERS applied ORS 238.005(9)(b) as the provision providing the greatest benefit to plaintiff. Under that provision, retirement benefits are computed by determining the "salary paid by a participating public employer" to the PERS member during the relevant time frame. That statute does not contain an offer to include accrued vacation leave or comp-time in the PERS retirement

---

argument both because it was not timely raised and because it conflicts with our long-standing case law. *See Oreg. Fire/Police Retire. v. PERB*, 62 Or App 777, 783, 662 P2d 729, *adh'd to on recons*, 65 Or App 465, 671 P2d 729 (1983), *rev den*, 296 Or 464 (1984) ("other advantages" refers to like-kind consumable items to "living quarters, board, lodging, fuel, laundry").

benefit calculation that is not paid as salary, as that term is defined in ORS 238.005(26).

Having identified the contract term, we turn to identifying the precise obligation that term imposes, because "[i]t is those obligations that set the conditions that the legislature may not in the future alter without consequences." *Strunk*, 338 Or at 201. Here, the obligation is straightforward based on the foregoing discussion: PERS was obligated to include plaintiff's January 2020 lump-sum payment as "salary" in calculating his final average salary. PERS did that. However, plaintiff argues that the salary cap cannot apply, because the lump-sum payment was attributable to work he performed before January 1, 2020. The problem with plaintiff's argument is that it does not grapple with the precise contours of the PERS contract term at issue here, which was that plaintiff was entitled to have lump-sum payments for accrued leave (that was paid to plaintiff during the relevant time) included as salary for purposes of calculating his retirement benefits. There was no salary to include in the calculation until plaintiff earned the salary—that is, until plaintiff earned the lump-sum payment—by terminating his employment while he had accrued unused leave that his employer had agreed would be paid out to plaintiff upon termination. The employer here fulfilled that agreement with plaintiff and paid out that leave on January 31, 2020. And, as provided by the contract term, PERS included that payment as salary in the calculation of his final average salary as salary paid to plaintiff in January 2020.

As we see it, the only remaining question in this case is whether the contract term included an obligation to not apply the January 2020 definition of salary to that January 31, 2020, lump-sum payment. The Supreme Court answered that question in the negative in *James*. In that case, the court addressed a facial challenge under Article I, section 21, to the salary cap. After determining that the salary cap applied only prospectively, the court addressed whether the pre-amendment definition of salary was an irrevocable term of the PERS contract. The court concluded that it was not, because a final average salary is not a type of benefit offer that takes time to complete the acceptance; rather, it is

a benefit "which 'accrues incrementally as a PERS member renders additional service to his or her employer.'" *James*, 366 Or at 755 (quoting *Moro*, 357 Or at 224). Plaintiff has not asserted an argument that would lead us to a different result than the one reached in *James*.

In sum, we conclude that PERS's application of the salary cap to plaintiff's January 2020 salary, which included a lump-sum payment for accrued vacation leave and comptime, was not an impairment of contractual obligations in violation of Article I, section 21.

Affirmed.